UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| United States of America<br><br>v.<br><br>Thomas Montril Brown | Case No. 4:05-cr-00770-TLW-1<br><br>**Order** |

This matter is before the Court on Defendant Thomas Montril Brown's pro se motion for a sentence reduction under the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A)(i). ECF No. 485. For the reasons set forth below, his motion is denied.

## I.     Factual and Procedural History

This case involves a breathtakingly violent, month-long crime spree across three states. During this spree, Brown and others committed multiple armed carjackings, robberies, home invasions, kidnappings, beatings, shootings, and even homicide. His lengthy sentence is amply justified by the egregious facts of this case.

Brown's crimes are described in more detail in Paragraphs 17 through 46 of the PSR, but the Court will briefly address each of them.

As the PSR outlines, their spree began with the most serious of crimes— murder. On March 16, 2005 in Whiteville, North Carolina, Brown and three others committed an armed home invasion in which they sought to rob the occupants of drugs. After forcing their way inside, they bound the three victims with duct tape. Brown took a pistol from one of his compatriots and shot one of the victims in the head, killing him. Brown and the others took cocaine, marijuana, and cash from the

1

residence before fleeing. PSR ¶ 38.

Two days later, Brown and the same three others committed an armed carjacking of Mario Baines and his passenger in Dillon, South Carolina. They forced Baines into their own vehicle and forced the passenger into the backset of Baines's vehicle. Both cars drove off together before stopping on a country road. After stealing jewelry and cash from the victims, the perpetrators released them and told them to run. As the victims ran, the perpetrators fired several shots into the air. PSR ¶ 17.

Brown was back at it three days later in Bennettsville, South Carolina. This time, he and two others committed an armed robbery of a convenience store. One of the perpetrators pointed a gun at the clerk and ordered her to keep her cash drawer open while all three went behind the counter and emptied the cash registers. The clerk and a customer were forced to lay on the floor while the perpetrators stole the clerk's pocketbook and the customer's cell phone and wallet. PSR ¶ 18.

Less than thirty minutes later, the same individuals committed another convenience store robbery in Clio, South Carolina with the same basic facts—they pointed a gun at the clerk, emptied the cash register, and stole the clerk's wallet. Additionally, while the robbery was going on inside, another perpetrator pointed a gun at a victim outside and carjacked her vehicle.[1] PSR ¶¶ 19–20.

Less than a week after the two convenience store robberies, Brown and three

---

[1] That stolen vehicle was recovered six days later in North Carolina when it crashed into a utility pole after a high-speed chase. Two firearms were recovered from the vehicle. PSR ¶ 19.

others committed a home invasion in Greensboro, North Carolina.[2] After the home invasion, they were involved with shooting a victim in a nearby motel's parking lot. After the shooting, they fled from the police in a high-speed pursuit and eluded arrest. PSR ¶ 39.

Four days after that, Brown and three others committed another armed home invasion in Tabor, North Carolina. This time, they forced their way inside the home and forced the victim and her two young daughters to lie face down on the bed while the perpetrators stole various items from the house. PSR ¶ 40.

Returning to South Carolina less than a week later, Brown and three others approached the victim in his yard in Hamar, South Carolina. They asked him if he would sell them the rims from his vehicle that was parked and running nearby. When he refused their request, one of the perpetrators pointed a revolver at him and forced him into their vehicle. One of the perpetrators got into the victim's vehicle and both vehicles drove away. While the victim was being driven around, one of the perpetrators hit him in the face with the revolver. They threatened to kill him by burning him with gasoline unless he told them the location of the key to the rims on his vehicle. They eventually released him and told him to run into the woods. PSR ¶¶ 22–24.

Less than a week later, this time in Waynesboro, Georgia, Brown and three others committed an armed robbery of four victims in the yard of a residence. The

---

[2] It appears that this is the incident that resulted in the state charges described in Paragraph 69 of the PSR, but that is not entirely clear from the record.

3

perpetrators robbed the victims and shot two of them—one in the arm and one in the leg. PSR ¶ 44.

That same day in Waynesboro, they committed an armed home invasion and robbery. When one of the home's occupants answered the door, three armed men pointed pistols at his face and started beating him. They asked him for money and when he said he did not have any, they shot him in the leg and then beat him again. While this was going on, one of the perpetrators pistol-whipped the other occupant. They stole cash, a cell phone, and a shotgun from the home. Before leaving the scene, they also tied up the victims, despite one of them having been shot. PSR ¶¶ 45–46.

Three days after the Waynesboro robberies, the group returned to North Carolina to commit a robbery and carjacking in Tabor City. The perpetrators drove towards the victim and when he jumped out of the way, one of them got into his car and the others robbed him before driving off in the stolen vehicle. After the robbery and carjacking, the group drove the vehicles to Florence, South Carolina where they dropped off their own vehicle before proceeding to Augusta, Georgia in the victim's stolen vehicle. PSR ¶ 41.

Less than a week later, they returned to North Carolina where they stole a vehicle in Red Springs. PSR ¶ 42.

The next day, April 22, 2005, their crime spree finally came to a close, but not without some fireworks. Brown and three others began their day in familiar fashion, with an armed robbery of a convenience store in Maxton, North Carolina. After the convenience store robbery, they crossed the border into South Carolina where they

4

committed a robbery in Dillon. During that robbery, the armed perpetrators approached the four victims, forced them to lie on the ground, then robbed them. Having stolen cash and cell phones from the victims, the perpetrators returned to their vehicle and fled to I-95, where police soon spotted them heading south. A high-speed pursuit ensued, with the perpetrators driving in the emergency lane and reaching speeds of 100 miles per hour. After fleeing for a few miles, they pulled onto the shoulder of the interstate. All four occupants exited the vehicle, jumped a fence, and ran into the woods. This resulted in a five-hour manhunt involving two helicopters, bloodhounds, and numerous law enforcement officers. All four were eventually arrested after being found hiding together in a wooded area. A search of the vehicle—which they had stolen the day before in Red Springs—uncovered an assault-style weapon, three handguns, and the shotgun they stole during the Waynesboro home invasion. PSR ¶¶ 25–27, 43.

Brown's eventful month resulted in a host of federal charges from the offenses he committed in the District of South Carolina. Specifically, he was charged with twelve counts:

- three counts of carjacking in violation of 18 U.S.C. § 2119 (Counts 1, 7, and 9);

- two counts of Hobbs Act robbery in violation of 18 U.S.C. § 1951(a) (Counts 3 and 5);

- one count of kidnapping in violation of 18 U.S.C. § 1201 (Count 10);

- one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (Count 12); and

- five counts of possessing a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A) (Counts 2, 4, 6, 8, and 11).

ECF No. 3. He elected to proceed to trial and was convicted on all counts. ECF No. 177.

On the carjacking, robbery, kidnapping, and felon in possession counts, the PSR calculated a Guidelines range of 324 to 405 months based on a total offense level of 39 and a criminal history category of III. PSR ¶ 163. On the § 924(c) counts, based on the law at the time, he faced mandatory minimum sentences of 10 years consecutive on Count 2 and 25 years consecutive on each of Counts 4, 6, 8, and 11, for a total of 110 years (1,320 months) consecutive on those five counts. *Id.* Thus, he faced an overall Guidelines range of 1,644 to 1,725 months. The Court sentenced him within that range to a total of 1,680 months (140 years) incarceration. ECF No. 197. He filed a direct appeal, but the Fourth Circuit affirmed. *United States v. Brown*, 223 F. App'x 257, 258 (4th Cir. 2007).

Years later, in the First Step Act of 2018, Congress modified § 924(c) such that the 25-year mandatory minimum penalty now applies to a second or subsequent § 924(c) conviction only if the prior § 924(c) conviction already "has become final." Pub. L. No. 115-391, § 403(a), 132 Stat. 5194, 5222. The Fourth Circuit has since held that district courts can consider the First Step Act's § 924(c) change when evaluating a defendant's motion pursuant to the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A)(i). *United States v. McCoy*, 981 F.3d 271, 285–86 (4th Cir. 2020).

Brown has now filed a motion seeking a sentence reduction under § 3582(c)(1)(A)(i). ECF No. 485. The Government filed a response in opposition and he filed a reply. ECF Nos. 518, 522. This matter is now ripe for decision.

## II. Compassionate release statute

Absent certain exceptions, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). One of those exceptions is the compassionate release statute. That statute provides, in relevant part, as follows:

> [T]he court, . . . upon motion of the defendant . . . , may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) . . . , if it finds that—(i) extraordinary and compelling reasons warrant such a reduction; . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). "A defendant who seeks compassionate release under § 3582(c)(1)(A)(i) has the burden of establishing that such relief is warranted." *United States v. Edwards*, 451 F. Supp. 3d 562, 565 (W.D. Va. 2020).

The Sentencing Commission has issued a policy statement addressing compassionate release motions—§ 1B1.13. But prior to the passage of the First Step Act, compassionate release motions could only be filed by the BOP, so § 1B1.13 by its terms only applies to BOP motions. *See McCoy*, 981 F.3d at 275–76 (explaining the First Step Act's changes to the compassionate release statute). There is no corresponding policy statement addressing compassionate release motions filed by inmates. Thus, in *McCoy*, the Fourth Circuit held that, when considering an inmate's compassionate release motion, § 1B1.13 is not an "applicable policy statement[ ]." *Id.* at 284. But while § 1B1.13 may not directly apply to an inmate's motion, "it remains helpful guidance." *Id.* at 282 n. 7.

While § 1B1.13 may provide guidance, it is not an applicable policy statement, so "district courts are empowered to consider *any* extraordinary and compelling

7

reason for release that a defendant might raise." *Id.* at 284 (cleaned up). Ultimately, the determination of whether a case presents extraordinary and compelling reasons warranting a sentence reduction is a question reserved to the sound discretion of the district court. *See United States v. Kibble*, 992 F.3d 326, 329 (4th Cir. 2021) (concluding that district court rulings on compassionate release motions are reviewed by the Fourth Circuit for abuse of discretion).

## III. Discussion

In Brown's motion and reply, he primarily relies on the First Step Act's change to § 924(c)'s penalties as the basis for a sentence reduction, but he also discusses his young age at the time he committed these offenses, the programs he has completed in prison, his behavior in prison, the amount of prison time he has already served, and his long history of mental health issues.

The Government opposes Brown motion, arguing that the § 924(c) change alone does not warrant a reduction. The Government also argues that the egregious nature of the facts of the case, his prison disciplinary history, the management of his mental health issues by the BOP, and the § 3553(a) factors all counsel against relief.

In considering whether to reduce Brown's sentence, the Court has carefully reviewed the PSR and has considered the statutory penalties, the Guidelines range, applicable caselaw and statutory law, the § 3553(a) factors, and his post-sentencing conduct.[3] In light of those considerations, the Court concludes that he has not shown

---

[3] The Court has considered in its analysis all of the issues raised in Brown's filings, including (1) his age when he committed the instant offenses; (2) the time he has

8

that the § 3553(a) factors weigh in favor of a reduction. The Court's reasons for reaching this conclusion include (1) the serious, extremely violent nature of the instant offenses, (2) his prior criminal conduct; (3) his prison disciplinary history; and (4) the treatment of his mental health issues by the BOP.

As to the "extraordinary and compelling" reason standard, the Court acknowledges the First Step Act's elimination of the "stacking" of sentences pursuant to § 924(c). As a result, if Brown were convicted of the same twelve charges today, he would be subject to lower mandatory minimum sentences on the § 924(c) counts and a lower overall sentencing range. However, Congress explicitly did not make the First Step Act's § 924(c) change retroactive.[4] § 403(b), 132 Stat. at 5222 ("This section, and the amendments made by this section, shall apply to any offense that was committed before the date of enactment of this Act, *if a sentence for the offense has not been imposed as of such date of enactment.*" (emphasis added)). Although the First Step Act's change to § 924(c) sentences "can constitute an extraordinary and compelling reason for relief," the Fourth Circuit recognized that "not *all* defendants convicted under § 924(c) should receive new sentences." *McCoy*, 981 F.3d at 285, 287. Deciding whether a particular defendant's sentence should be reduced is ultimately an individualized, case-by-case inquiry. *See id.* at 287–88. In light of *McCoy*, and for

---

already served and the remaining time; (3) the courses he has completed in prison; (4) his mental health issues; (5) his conduct while incarcerated; and (6) the First Step Act's change to § 924(c)'s statutory penalties.

[4] Nevertheless, the Court recognizes that this change must still be considered when evaluating a motion for compassionate release. *See McCoy*, 981 F.3d at 284.

purposes of Brown's motion, the Court will assume that he has established "extraordinary and compelling" circumstances. However, based on the Court's analysis and balancing of the § 3553(a) factors, his sentence should not be reduced.

In conjunction with the § 3553(a) factors, the Court reiterates the facts surrounding Brown's extreme offense conduct, which were thoroughly detailed above. Throughout his month-long crime spree, he actively disregarded the safety of his victims or the public. The conduct behind all of his charges was significant and violent, but the conduct resulting in the charges in Counts 9, 10, and 11 warrants particular mention. There, he and his cohorts carjacked a man, kidnapped him, pistol-whipped him, and threatened to kill him by burning him alive, simply because he did not tell them the location of the key to the rims of his car. That depraved conduct, standing alone, would be enough to warrant a very significant sentence. However, when considering that this was just one of many violent, dangerous offenses that he committed over the course of just one month, it is apparent that the lengthy sentence that he received is amply justified. After a review of this aggravated, depraved offense conduct, the Court concludes that "the nature and circumstances of the offense," 18 U.S.C. § 3553(a)(1), weigh against release.

As to "the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1), the Court acknowledges that Brown was young at the time of his offenses—only 18 years old. However, he had already accumulated a significant, violent criminal record: a juvenile adjudication for communicating a threat and assaulting a government official at age 11, another juvenile adjudication for assaulting an

10

individual with a belt buckle at age 13, and an adult conviction for possessing a sawed-off shotgun at age 16.[5] PSR ¶¶ 57–58, 60.

A review of Brown's prison disciplinary records also reveals a continuing, distinct lack of respect for the law. He has had significant disciplinary problems at the BOP, particularly when he first arrived. Although the frequency and seriousness of his disciplinary issues has faded over time, he does have a violent infraction for fighting with another inmate in May 2020. His history of disciplinary infractions is quite extensive, with infractions for fighting, threatening bodily harm, destroying property, possessing drugs, possessing weapons, and engaging in sexual acts, along with numerous more minor infractions. ECF No. 518-1.

Consideration of Brown's history and characteristics must also include a careful review of his mental health issues, which are reflected in the records he included with his motion. The Government argues that "[his] claims of serious mental health issues are dubious." ECF No. 518 at 9. The Court notes that the significance of his mental health conditions is outlined in his submitted records. He does have mental health issues. But the records also reveal that the BOP is addressing them with the seriousness and care that they warrant. The records also reflect that when he is compliant with his medication, he can function within the normal prison population. *See, e.g.*, ECF No. 485-2 at 5 ("Because he began taking medication as prescribed, his mental status cleared relatively quickly, and emergency medication

---

[5] He also informed the probation officer that he was placed on juvenile probation at the age of 12 for breaking a teacher's leg. However, no records of this offense could be located. PSR ¶ 59.

was not deemed necessary. . . . While he still was experiencing some auditory hallucinations (e.g., he believed he had ear implants), he was able to maneuver open population with no difficulty."). While he does have mental health issues, when considered as part of a holistic review of the § 3553(a) factors, the Court concludes that they do not warrant a sentence reduction. Again, his significant, violent conduct must be considered along with his mental health issues.

The Court also concludes that §§ 3553(a)(2)(A)–(C) weigh against release for similar reasons. As thoroughly discussed above, Brown's conduct was egregious and violent. The sentence imposed was and is necessary to reflect the seriousness of the offenses, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public. In *McCoy*, the district court concluded that the defendant's stacked § 924(c) sentences "far exceeded that necessary to achieve the ends of justice." 981 F.3d at 278. Here, by contrast, the Court concludes that Brown's current sentence is sufficient, but not greater than necessary, to satisfy the factors in § 3553(a)(2).

The Court next turns to §§ 3553(a)(3)–(6)—the kinds of sentences available, the Guidelines sentencing range, any applicable policy statements, and the need to avoid sentencing disparity. As noted, the First Step Act's elimination of § 924(c) "stacking" would subject Brown to a lower mandatory minimum and corresponding Guidelines range if he were convicted of the same offenses today. On the § 924(c) counts, he would be facing the same 10-year consecutive sentence on Count 2 because the firearm was discharged, but he would be facing 7-year consecutive sentences on

12

Counts 4, 6, 8, and 11, rather than the 25-year consecutive sentences on those counts that were required when he was originally sentenced. But while he would be facing a lower mandatory minimum sentence if he were sentenced today, the facts of this case would not warrant a sentence at the mandatory minimum. Irrespective of the Guidelines range that would apply today, an upward variance to no less than his current sentence would be amply justified by the egregious facts of this case. The Court has given careful consideration to this issue and concludes that the factors in §§ 3553(a)(3)–(6) do not weigh in favor of release.

As to the remaining factors, the Court acknowledges that the record reflects that Brown has made some rehabilitative efforts while incarcerated. However, this fact, balanced against the factors discussed above, does not warrant release.

The record, as outlined in this order, shows that Brown repeatedly committed violent acts over an extended period of time in different states. At no time did he consider his conduct and choose to change course, and, upon reflection, end the conduct. His acts were violent and there were many victims. In light of the significant violence he inflicted on others over an extended period of time, it is reasonable to conclude that, if release, he would pose a significant danger to the public. Thus, applying the § 3553(a) factors, the Court concludes that it is appropriate to deny his motion for a sentence reduction. There are no "extraordinary and compelling reasons" warranting a reduction.

As noted, the Fourth Circuit indicated that district courts should not grant sentence reductions based solely on the First Step Act's change to § 924(c) but should

13

instead "conduct individualized inquires" and consider factors specific to the defendant. *McCoy*, 981 F.3d at 288. The Court has followed that guidance and has based its decision on the individualized considerations outlined in detail above, after having fully considered each of Brown's arguments. The Court's § 3553(a) analysis leads the Court to conclude that he must serve the remainder of the sentence imposed because it is sufficient, but not greater than necessary to satisfy the applicable sentencing factors.

## IV. Conclusion

For the reasons stated, Brown's motion for compassionate release, ECF No. 485, is **DENIED**.[6]

**IT IS SO ORDERED**.

*s/ Terry L. Wooten*
Terry L. Wooten
Senior United States District Judge

February 22, 2022
Columbia, South Carolina

---

[6] He has also filed motions seeking appointment of counsel to assist him with this motion, but he has not set forth an adequate basis for that request, so his motions, ECF Nos. 499, 523, are **DENIED**.