IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Thomas Montril Brown, | Crim. No. 4:05-cr-00770-TLW-1 |
| PETITIONER | C/A No. 4:16-cv-02254-TLW |
| v. | |
| United States of America, | **ORDER** |
| RESPONDENT | |

This matter comes before the Court for consideration of Petitioner Thomas Montril Brown's petition to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 filed. ECF Nos. 546 & 588.[1] For the reasons stated below, the Court denies the petition and dismisses this action.

## FACTUAL BACKGROUND

To provide context to both Brown's petition and the Court's decision, the Court will first review the offense conduct relevant to Brown's present incarceration before reviewing the procedural history of this case, the parties' arguments, and conducting its analysis of the issues raised.

Given that the Court has previously recited Brown's significant and violent offense conduct in previous orders, it will set forth its earlier summary of this case's factual background:

---

[1] Brown originally filed a *pro se* petition. ECF No. 546. However, he was appointed counsel, W. James Hoffmeyer, Esquire, who filed a supplemental petition on Brown's behalf. ECF No. 588. The Court will consider Brown's petition and his counsel's supplement together (collectively, the "petition").

This case involves a breathtakingly violent, month-long crime spree across three states. During this spree, Brown and others committed multiple armed carjackings, robberies, home invasions, kidnappings, beatings, shootings, and even homicide. His lengthy sentence is amply justified by the egregious facts of this case.

Brown's crimes are described in more detail in Paragraphs 17 through 46 of the [Presentence Investigation Report] ["PSR"], but the Court will briefly address each of them.

As the PSR outlines, their spree began with the most serious of crimes—murder. On March 16, 2005 in Whiteville, North Carolina, Brown and three others committed an armed home invasion in which they sought to rob the occupants of drugs. After forcing their way inside, they bound the three victims with duct tape. Brown took a pistol from one of his compatriots and shot one of the victims in the head, killing him. Brown and the others took cocaine, marijuana, and cash from the residence before fleeing. PSR ¶ 38.

Two days later, Brown and the same three others committed an armed carjacking of Mario Baines and his passenger in Dillon, South Carolina. They forced Baines into their own vehicle and forced the passenger into the backset of Baines's vehicle. Both cars drove off together before stopping on a country road. After stealing jewelry and cash from the victims, the perpetrators released them and told them to run. As the victims ran, the perpetrators fired several shots into the air. PSR ¶ 17.

Brown was back at it three days later in Bennettsville, South Carolina. This time, he and two others committed an armed robbery of a convenience store. One of the perpetrators pointed a gun at the clerk and ordered her to keep her cash drawer open while all three went behind the counter and emptied the cash registers. The clerk and a customer were forced to lay on the floor while the perpetrators stole the clerk's pocketbook and the customer's cell phone and wallet. PSR ¶ 18.

Less than thirty minutes later, the same individuals committed another convenience store robbery in Clio, South Carolina with the same basic facts—they pointed a gun at the clerk, emptied the cash register, and stole the clerk's wallet. Additionally, while the robbery was going on inside, another perpetrator pointed a gun at a victim outside and carjacked her vehicle. PSR ¶¶ 19–20.

Page **2** of **35**

Less than a week after the two convenience store robberies, Brown and three others committed a home invasion in Greensboro, North Carolina. After the home invasion, they were involved with shooting a victim in a nearby motel's parking lot. After the shooting, they fled from the police in a high-speed pursuit and eluded arrest. PSR ¶ 39.

Four days after that, Brown and three others committed another armed home invasion in Tabor, North Carolina. This time, they forced their way inside the home and forced the victim and her two young daughters to lie face down on the bed while the perpetrators stole various items from the house. PSR ¶ 40.

Returning to South Carolina less than a week later, Brown and three others approached the victim in his yard in Hamar, South Carolina. They asked him if he would sell them the rims from his vehicle that was parked and running nearby. When he refused their request, one of the perpetrators pointed a revolver at him and forced him into their vehicle. One of the perpetrators got into the victim's vehicle and both vehicles drove away. While the victim was being driven around, one of the perpetrators hit him in the face with the revolver. They threatened to kill him by burning him with gasoline unless he told them the location of the key to the rims on his vehicle. They eventually released him and told him to run into the woods. PSR ¶¶ 22–24.

Less than a week later, this time in Waynesboro, Georgia, Brown and three others committed an armed robbery of four victims in the yard of a residence. The perpetrators robbed the victims and shot two of them—one in the arm and one in the leg. PSR ¶ 44.

That same day in Waynesboro, they committed an armed home invasion and robbery. When one of the home's occupants answered the door, three armed men pointed pistols at his face and started beating him. They asked him for money and when he said he did not have any, they shot him in the leg and then beat him again. While this was going on, one of the perpetrators pistol-whipped the other occupant. They stole cash, a cell phone, and a shotgun from the home. Before leaving the scene, they also tied up the victims, despite one of them having been shot. PSR ¶¶ 45–46.

Three days after the Waynesboro robberies, the group returned

to North Carolina to commit a robbery and carjacking in Tabor City. The perpetrators drove towards the victim and when he jumped out of the way, one of them got into his car and the others robbed him before driving off in the stolen vehicle. After the robbery and carjacking, the group drove the vehicles to Florence, South Carolina where they dropped off their own vehicle before proceeding to Augusta, Georgia in the victim's stolen vehicle. PSR ¶ 41.

Less than a week later, they returned to North Carolina where they stole a vehicle in Red Springs. PSR ¶ 42.

The next day, April 22, 2005, their crime spree finally came to a close, but not without some fireworks. Brown and three others began their day in familiar fashion, with an armed robbery of a convenience store in Maxton, North Carolina. After the convenience store robbery, they crossed the border into South Carolina where they committed a robbery in Dillon. During that robbery, the armed perpetrators approached the four victims, forced them to lie on the ground, then robbed them. Having stolen cash and cell phones from the victims, the perpetrators returned to their vehicle and fled to I-95, where police soon spotted them heading south. A high-speed pursuit ensued, with the perpetrators driving in the emergency lane and reaching speeds of 100 miles per hour. After fleeing for a few miles, they pulled onto the shoulder of the interstate. All four occupants exited the vehicle, jumped a fence, and ran into the woods. This resulted in a five-hour manhunt involving two helicopters, bloodhounds, and numerous law enforcement officers. All four were eventually arrested after being found hiding together in a wooded area. A search of the vehicle—which they had stolen the day before in Red Springs—uncovered an assault-style weapon, three handguns, and the shotgun they stole during the Waynesboro home invasion. PSR ¶¶ 25–27, 43.

Brown's eventful month resulted in a host of federal charges from the offenses he committed in the District of South Carolina. Specifically, he was charged with twelve counts:

- three counts of carjacking in violation of 18 U.S.C. § 2119 (Counts 1, 7, and 9);

- two counts of Hobbs Act robbery in violation of 18 U.S.C. § 1951(a) (Counts 3 and 5);

- one count of kidnapping in violation of 18 U.S.C. § 1201 (Count 10);

- one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (Count 12); and

- five counts of possessing a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A) (Counts 2, 4, 6, 8, and 11).

ECF No. 3. He elected to proceed to trial and was convicted on all counts. ECF No. 177.

On the carjacking, robbery, kidnapping, and felon in possession counts, the PSR calculated a Guidelines range of 324 to 405 months based on a total offense level of 39 and a criminal history category of III. PSR ¶ 163. On the § 924(c) counts, based on the law at the time, he faced mandatory minimum sentences of 10 years consecutive on Count 2 and 25 years consecutive on each of Counts 4, 6, 8, and 11, for a total of 110 years (1,320 months) consecutive on those five counts. *Id.* Thus, he faced an overall Guidelines range of 1,644 to 1,725 months. The Court sentenced him within that range to a total of 1,680 months (140 years) incarceration. ECF No. 197. He filed a direct appeal, but the Fourth Circuit affirmed. *United States v. Brown*, 223 F. App'x 257, 258 (4th Cir. 2007).

ECF No. 534 at 1–6

## PROCEDURAL HISTORY

This habeas action has an extensive procedural history. On April 21, 2008, Brown filed his first § 2255 petition. ECF No. 252. His first petition raised thirteen grounds for relief. *Id.*; ECF Nos 260, 262 & 264. In his § 2255 petition, he challenges his convictions on all five § 924(c) counts, as he says he was "convicted of a non-offense over which this court did not have jurisdiction." ECF No. 357 at 1. The Government filed a response in opposition to the petition and moved for summary judgment. ECF No. 273. After extensive additional briefing from both Brown and the Government, the Court granted the Government's motion for summary judgment and denied Brown's first petition in a detailed, twenty-six-page order.

ECF No. 280. Brown appealed the Court's order. ECF No. 292. The Fourth Circuit dismissed his appeal, finding that it was not timely filed. ECF No. 303.

On June 24, 2016, Brown, pursuant to 28 U.S.C. § 2244, requested authorization from the Fourth Circuit to file a second § 2255 in light of the Supreme Court of the United States' decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015). ECF No. 350. The Fourth Circuit granted Brown's request and appointed him counsel, who filed a second § 2255 on Brown's behalf. ECF Nos. 349, 356, 357 & 367. Brown's second petition asserted that several of his § 924(c) convictions were invalid on the basis that Hobbs Act robbery and carjacking did not qualify as crimes of violence under § 924(c)(3)(A). ECF Nos. 357 & 367. In a detailed order dated April 17, 2019, the Court concluded that these arguments had no persuasive legal basis and denied Brown's second § 2255 petition. ECF No. 403. Brown appealed, and the Fourth Circuit denied him a certificate of appealability. ECF No. 437.

On June 24, 2020, Brown filed a second request with the Fourth Circuit pursuant to § 2244 requesting authorization to file a successive § 2255 petition. ECF No. 456. Specifically, he requested permission to challenge his convictions and sentence in light of the Supreme Court's holding in *United States v. Davis*, 139 S.Ct. 2319 (2019). *Id.* After holding his request in abeyance, the Fourth Circuit granted Brown's second § 2244 motion and allowed him to file a successive § 2255. The Fourth Circuit's order stated:

> Brown has made a prima facie showing that the new retroactively applicable rule of constitutional law announced in *United States v. Davis* applies to his case . . . Thus, we grant Brown's motion for

authorization to file a second or successive § 2255 motion, thereby permitting consideration by the district court in the first instance of *United States v. Crawley* on Brown's claims.

ECF No. 537.

On May 20, 2022, Brown moved for the appointment of counsel in light of the Fourth Circuit's order. ECF No. 539. While this motion was pending, Brown filed a third § 2255 motion on the Court's standard *pro se* § 2255 form. ECF No. 546. On July 27, 2022, the Court granted Brown's motion for the appointment of counsel and appointed the Federal Public Defender's Office to represent Brown. ECF No. 547. On the motion of the Federal Public Defender's Office, the Honorable Kaymani D. West, United States Magistrate Judge, determined that a conflict of interest existed between Brown and the Federal Public Defender's Office. ECF No. 570. Accordingly, she appointed W. James Hoffmeyer, Esquire, to represent Brown in this proceeding. ECF No. 571. On August 2, 2023, Mr. Hoffmeyer filed a supplemental § 2255 on Brown's behalf. ECF No. 588.  The Government opposes Brown's motion and has moved for summary judgment. ECF No. 598. Brown has since filed a reply to the Government's opposition. ECF No. 602. Accordingly, this matter is ripe for review, adjudication, and disposition.

## LEGAL STANDARD

### I.     28 U.S.C. § 2255

Title 28, Section 2255 of the United States Code provides that a prisoner in custody under sentence of a federal court may petition in the court that imposed the sentence to vacate, set aside, or correct the sentence. A petitioner is entitled to relief

under § 2255 if he proves by a preponderance of the evidence one of the following: (1) that the sentence was imposed in violation of the Constitution or laws of the United States; (2) that the court was without jurisdiction to impose such sentence; (3) that the sentence exceeded the maximum authorized by law; or (4) that the sentence is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255(a); *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958) (per curiam). "The scope of review of non-constitutional error is more limited than that of constitutional error; a non-constitutional error does not provide a basis for collateral attack unless it involves 'a fundamental defect which inherently results in a complete miscarriage of justice,' or is 'inconsistent with the rudimentary demands of fair procedure.'" *Leano v. United States*, 334 F. Supp. 2d 885, 890 (D.S.C. 2004) (quoting *United States v. Mikalajunas*, 186 F.3d 490, 495–96 (4th Cir. 1999)).

In deciding a § 2255 petition, a court need not hold a hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). The Court has thoroughly reviewed the motions, files, and records in this case, liberally construing Petitioner's filings, and finds that no hearing is necessary.

## II.   SUMMARY JUDGMENT

To prevail on a motion for summary judgment, the movant must demonstrate both that there is no genuine issue of any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The party seeking summary judgment has the burden of identifying the portions of the "pleadings,

depositions, answers to interrogatories, any admissions on file, together with the affidavits, if any, which show there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court will construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962). The existence of a mere scintilla of evidence in support of the non-moving party's position is insufficient to withstand a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). However, an issue of material fact is genuine if the evidence is such that a reasonable jury could return a verdict in favor of the non-movant. *Id.* at 257.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 587. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 289 (1968)).

<u>DISCUSSION</u>

The Fourth Circuit's order granted Brown's second § 2244 motion and gave him permission to file a third § 2255 petition for the limited purpose of "permitting consideration by the district court in the first instance of *United States v. Crawley*

on Brown's claims." ECF No. 537. The present petition raises several arguments under *Crawley*; however, it also raises several additional arguments that fall outside of Fourth Circuit's granting Brown permission to file a third § 2255 petition for consideration of *Crawley*. Accordingly, the Court will first analyze those arguments that fall squarely within the purview of the Fourth Circuit's order and *Crawley* before evaluating Brown's additional habeas arguments.

I.   THE FOURTH CIRCUIT'S OPINION IN *CRAWLEY* DOES NOT PROVIDE A BASIS FOR RELIEF.

The Fourth Circuit granted Brown's permission to file a third § 2255 petition so that this Court, noting *United States v. Davis*, could consider the impact of the Fourth Circuit's decision in *United States v. Crawley* on Brown's case. ECF No. 537. Accordingly, the Court will first outline the Fourth Circuit's decision in *Crawley* before addressing its applicability to the claims raised in Brown's § 2255 petition.

A.   *Crawley v. United States*

In *Crawley*, the Fourth Circuit addressed the validity of a defendant's § 924(c) conviction when it was "expressly based" on both a "valid" and "invalid" § 924(c) predicate offense. *United States v. Crawley*, 2 F.4th 257 (4th Cir. 2021). In that case, the defendant's indictment, plea agreement, and plea hearing transcript all referenced a valid § 924(c) predicate (a drug trafficking offense) and a predicate which was invalided after the defendant's conviction (conspiracy to commit Hobbs Act robbery). *Id.* at 260–61, 267. The defendant argued that, because one of the predicate offenses was also no longer valid, his § 924(c) conviction was no longer

valid. *Id.* In reviewing this argument, the Fourth Circuit held that if a defendant's § 924(c) conviction is "expressly based on [a] valid and invalid predicate," then it "remains sound following *Johnson* and its progeny." *Id.* 263. "In other words," the Fourth Circuit concluded that it will "uphold a § 924(c) conviction if it is "expressly predicated" on at least one offense that categorically qualifies as a crime of violence or drug trafficking crime." *United States v. Ogun*, No. 16-7450, 2022 WL 843899, at *2 (4th Cir. Mar. 22, 2022) (citing *Crawley*, 2 F.4th at 263).

The *Crawley* analysis only applies to § 924(c) convictions that are supported by more than one predicate offense. Here, this analysis is only applicable to Brown's convictions on Count 11 (a § 924(c) offense committed on April 6, 2005) because, as explained below, it is the only one of Brown's § 924(c) convictions supported by more than one predicate offense count, specifically, Count 9, charging carjacking on April 6, 2005; and Count 10, charging kidnapping on April 6, 2005.

## B. The Parties' Arguments

Initially, Brown challenges *all* of his § 924(c) convictions, asserting that they are "speculative" because "there was a general verdict in his case which does not set forth which counts of conviction were considered as predicate offenses for the 18 U.S.C. § 924(c)(1)(A) convictions by the jury." ECF No. 588 at 3. With regard to the specifics of *Crawley*, Brown argues that his § 924(c) conviction on Count 11 is no longer valid because *both* of the predicate offenses, kidnapping and carjacking, are no longer crimes of violence. *Id.* 1–3.

In response, the Government explains that Brown's § 924(c) convictions are

not "speculative" because, as illustrated by the indictment, the § 924(c) counts and their underlying predicate offenses are "inextricably intertwined" and both connected to a "single event." ECF No. 598 at 13. Regarding Count 11, the Government concedes that Brown's conviction for kidnapping in Count 10 no longer categorically qualifies as a predicate § 924(c) crime of violence. *Id.* at 12. However, the Government points out that Brown's carjacking conviction in Count 9 remains a predicate crime of violence. *Id.* Thus, because Brown's § 924(c) conviction on Count 11 is based on both a "valid" predicate (carjacking) and an "invalid" predicate (kidnapping), the Government maintains that it is still a valid conviction under the *Crawley* analysis. *Id.* at 12–13. Accordingly, the Government has moved for summary judgment, arguing that there it is entitled to judgment as a matter of law because Brown is not entitled to relief under the limited scope set forth in the Fourth Circuit's order granting Brown permission to file a third § 2255 petition.

### C.  The Court's Analysis

The Court has carefully reviewed Brown's assertion that each of his § 924(c) convictions is invalid because they are "speculative" as well as his argument that his § 924(c) conviction for Count 11 is invalid in the aftermath of *Crawley*. In doing so, and for the reasons that follow, the Court concludes that he is not entitled to relief on either of these two arguments. In explaining its reasoning, the Court will first address the § 924(c) conviction directly implicated by *Crawley*, Count 11, before analyzing Brown's challenge to his other four § 924(c) convictions.

i.    _Brown's § 924(c) conviction on Count 11 is still valid after Crawley._

First, the Court concludes that _Crawley_ does not provide Brown with an avenue for relief with regard to his § 924(c) conviction on Count 11. To explain its analysis in detail, the Court will discuss the three counts at issue here before applying the Fourth Circuit's analysis in _Crawley_.

Like the defendant in _Crawley_, Brown's § 924(c) conviction was based on two predicate crimes of violence, specifically, Counts 9 and Count 10. ECF No. 2. These counts which respectively charged him with committing carjacking and kidnapping on April 6, 2005. ECF No. 2. As outlined above, Brown and his codefendants were driving through a rural section of Dillon County, South Carolina, and noticed a parked car with some expensive tire rims. _Id._ ¶ 22. Brown and his codefendants approached the car's owner and offered to purchase the rims. _Id._ When the owner declined their offer, "the men pulled a gun on him, ordered the owner into the car, drove across state lines, and hit the owner with a revolver in the face and threatened they would take him in the woods and kill him by burning him with gasoline unless he helped them remove the rims." _Graham_, 67 F.4th at 220 (summarizing the facts of this incident in Brown's co-defendant's case) (cleaned up); PSR ¶ 22. After the victim relented, Brown and his codefendants released the victim and told him to run into the woods. _Id._ ¶ 23. In connection with this violent conduct, committed on April 6, 2005, the Indictment charged Brown with carjacking in Count 9, kidnapping in Count 10, and with a violation of § 924(c) in Count 11. ECF No. 2. At trial, the jury convicted Brown on each of these three counts.

As noted, in *Crawley*, the Fourth Circuit held that "a § 924(c) conviction based on one valid and one invalid predicate offense remains sound [.]" *Id.* at 262–263 (reaffirming *United States v. Hare*, 820 F.3d 93 (4th Cir. 2016) (holding that a § 924(c) conviction based on one valid and one invalid predicate offense remains sound following *Johnson v. United States*, 576 U.S. 591 (2015)). Thus, in order to secure a vacation of his sentence, Brown must show "more than a reasonable possibility" that the jury found him guilty under § 924(c) based only on an invalid predicate. *United States v. Said*, 26 F.4th 653, 661–62 (2022). The Court concludes that Brown has not met this burden here.

Initially, the Court notes that Brown is correct that one of the predicate convictions establishing his § 924(c) conviction in Count 11 is no longer a valid predicate. Specifically, the Fourth Circuit held that kidnapping in violation of 18 U.S.C. § 1201(a)—the offense Brown was convicted of in Count 10—no longer categorically qualifies as a crime of violence. *See United States v. Walker*, 934 F.3d 375 (4th Cir. 2019). However, the other predicate offense for his § 924(c) conviction in Count 11, carjacking in violation of 18 U.S.C. § 2119, remains a valid § 924(c) predicate offense because it still categorically qualifies as a crime of violence. *See United States v. Evans*, 848 F.3d 242, 244 (4th Cir. 2017). Thus, like the defendant in *Crawley*, Brown's § 924(c) conviction on Count 11 is based on one valid and one invalid predicate. It therefore remains "sound." *Crawley*, 2 F.4th at 263. Thus, in complying with the Fourth Circuit's order and "consider[ing]. . . in the first instance of *United States v. Crawley*['s]" applicability on Brown's case, the Court concludes

that Brown is not entitled to relief because his § 924(c) conviction on Count 11 remains valid. The Government is therefore entitled to summary judgment as to this claim.

ii.    _Brown's other § 924(c) convictions remain valid._

Although not explicitly within the scope of the Fourth Circuit's order granting him permission to file a third § 2255, Brown next argues that his remaining § 924(c) convictions on Counts 2, 4, 6, and 8 are invalid because they are "speculative." ECF No. 588 at 3.  Specifically, Brown posits that his convictions on these counts rest on a speculative basis because "there was a general verdict in his case which does not set forth which counts of conviction were considered as predicate offenses for the 18 U.S. Code § 924(c)(1)(A) convictions by the jury [because] [t]he verdict form does not indicate which counts of conviction the jury found to be the predicate offense for 18 U.S. Code § 924(c)(1)(A) convictions. _Id._ The Court has carefully reviewed this argument and concludes relief is not warranted for three reasons. First, a special verdict form was not necessary in Brown's case. Second, Brown's bare assertion that his § 924(c) convictions are "speculative" does not rise to a basis for habeas relief, and third, the record clearly reflects that the jury was fully and properly advised by the Court of how the charged predicate counts related to the charged § 924(c) counts. There is no confusion in either the jury charge or the law applied in connection with the § 924(c) counts in the Indictment.

First, the Court concludes that the use of a general verdict form in Brown's

case was appropriate because, "[w]hile 'proof of a predicate offense is an essential element of a § 924(c) violation,' the Government is not required to identify a specific § 924(c) predicate offense in the indictment or to separately charge the defendant with the predicate offense." *United States v. Alston*, 855 F. App'x 895 (4th Cir. 2021) (quoting *United States v. Randall*, 171 F.3d 195, 208 (4th Cir. 1999)). The Fourth Circuit noted as much in Elliott Graham, Brown's co-defendant's, case. *See United States v. Graham*, 67 F.4th 218, 221 (4th Cir. 2023) ("the government need not specify a specific § 924(c) predicate offense in the § 924(c) charge in the indictment, nor separately charge or convict the defendant of the § 924(c) predicate offense.") (cleaned up)). Thus, the use of a general verdict form alone does not make Brown's § 924(c) convictions "speculative," such that habeas relief is now warranted.

Second, Brown's bare assertion that, based on the verdict form alone, his § 924(c) convictions could be "speculative" is insufficient to establish his entitlement to habeas relief. This is because "mere 'uncertainty as to which . . . [predicate or predicates] the jury [relied on] when it found [the defendant] guilty of the § 924(c) counts' does not suffice to demonstrate plain error, let alone the sort of substantial and injurious error required for habeas relief." *Said*, 26 F.4th at 661–62 (citing *Davis*, 576 U.S. at 268; *United States v. Ali*, 991 F.3d 566, 575 (4th Cir. 2021)). To establish his entitlement for habeas relief, Brown would need to show "more than a reasonable possibility" that the jury *only* found him guilty on Counts 2, 4, 6, and 8 because it improperly considered a non-predicate offense (the only one of which is kidnapping). *Id.* There is no need to evaluate that possibility here because "the jury

*actually convicted* [Brown] of all possible predicate theories." *Id.* at 663. However, there is thus "no ambiguity about the substantive crimes the jury convicted [Brown] of" because "the jury found [him] guilty of every charge, and he has not pointed to ways in which those individual charges could be split into valid and invalid predicates." *Id.* Instead, he asks this Court to hold that his § 924(c) predicates are invalid "because the jury did not specify on which predicate or predicates its § 924(c) conclusions were based [.]" *Id.* That alone is not a basis for establishing Brown's entitlement to habeas relief because he "has pointed to nothing to eliminate the commonsense prospect that the jury relief on one or more of the valid predicates when it convicted him of the § 924(c) charges in" Counts 2, 4, 6, & 8. *Id.* at 664; *United States v. Jones*, No. 3:97CR169, 2022 WL 5101850, at *3 (E.D. Va. Oct. 4, 2022) ("Commonsense dictates that the jury had his valid predicate in mind when it convicted Jones on" his § 924(c) counts).

Additionally, it is important to note that a verdict form is primarily used to allow the jury to reduce its decision to writing. A verdict form is not given to the jury to inform its members of the specifics as to the law they are to apply. The charge on the law given to the jury by the Court explains the criminal charges to the members of the jury and how they are to go about reaching their verdict. In this case, the charge on the law properly advised the jury of the law related to the § 924(c) counts in the Indictment.[2] ECF No. 205 at 185:7–215:7. The charge also explained to the jury what is required, specifically, a predicate offense, to convict on

---

[2] The full charge is set forth in ECF No. 205 at 178:22–228:6.

a § 924(c) count. *Id.* at 207:8–210:20. There was no confusion in the charge on the law given to the jury regarding convicting on a § 924(c) charge. Trial counsel had not objection to the charge delivered to the jury, which explained in detail the law it was to apply in evaluating the § 924(c) counts charged in the Indictment. *Id.* at 229:23–230:2. In this § 2255 action, Brown simply places undue emphasis on the structure of the verdict form, ignoring the Court's proper charge on the law. Furthermore, the jury gave no indication that it was confused as to the law it would apply in evaluating the § 924(c) counts. Given the Court's charge, which Brown did not object to, there was no reason for the jury to be confused.

Third, the record is clear as to the relationship between the predicate offense counts and each accompanying § 924(c) count. Identifying the predicate offense supporting a § 924(c) conviction can be a fact-intensive inquiry. *See United States v. Alston*, 855 F. App'x 895 (4th Cir. 2021). That is not the circumstances in Brown's case. To conduct this inquiry, the Court must look at "critical record documents" to ascertain which predicate offenses are connected to the § 924(c) convictions at issue. *Crawley*, 2 F.4th at 262; *Graham*, 67 F.4th at 221 (noting that in that the plea transcript is the "critical document" in evaluating what predicate offense establishing a defendant's § 924(c) guilty plea.) However, in Brown's case, the "critical documents" (the Indictment, the trial transcripts, and the Court's detailed jury charge), as well as the evidence at trial, all clearly identify the predicate offenses supporting the § 924(c) convictions at issue.

The Indictment clearly tied together the underlying predicate offense counts

with their accompanying § 924(c) counts. The form of the Indictment directly connected each predicate count with its accompanying § 924(c) count by first charging the predicate offense before charging the accompanying § 924(c) count and by identifying the date of each predicate offense and the date of each § 924(c) count, which clearly connect. *See* ECF No. 2. This is clearly illustrated in the first eight counts, whereby each odd numbered count charges the predicate offense and each even number count charges a § 924(c) violation in relation to the previously charged predicate offense. *Id.* Similarly, as noted, each predicate offense count is connected to its accompanying § 924(c) count by the date of offense charged for both counts. *Id.* And, where necessary, multiple offenses which occurred on the same day are further distinguished by other charged information (the year and model of car stolen or name of the commercial business robbed) related to the predicate offense at issue:

| Predicate Count | § 924(c) Count | Date of Offense |
|---|---|---|
| Count 1 (carjacking) | Count 2 | March 18, 2005 |
| Count 3 (Hobbs Act Robbery of The Corner Cupboard) | Count 4 | March 21, 2005 |
| Count 5 (Hobbs Act Robbery of The Cash and Carry) | Count 6 | March 21, 2005 |
| Count 7 (carjacking) | Count 8 | March 21, 2005 |

*Id.*

The connections between the predicate offense counts and their corresponding § 924(c) counts were explicitly and clearly explained to the jury in the Government's opening statement as (1) part and parcel of what the evidence would

show at trial and (2) to clarify the relationship between the charges in the

Indictment:

Counts 1 and 2: "Count 1 in this Indictment alleges on or about March 18, 2005 . . . Thomas Montril Brown . . . did take from the person and presence of another, a motor vehicle . . . that is carjacking . . . but in connection with carjacking, Count 2, on the same date, that charges that [the Defendants] possessed firearms in furtherance of a crime of violence. *You'll see the same pattern through each of these counts we're going to talk about.*" ECF No. 204 at 14–205:25 (emphasis added).

Counts 3 and 4: Now, Count 3 is three days later. It charges . . . [with regard to] Corner Cupboard on highway 15 and 401 bypass, Bennettsville, South Carolina . . . that on or about March 2005 . . . Thomas Montril Brown . . . did knowingly obstruct, delay and effect commerce . . . by robbery . . . it's armed robbery of a convenience store . . . . You'll see from the evidence, Ladies and Gentlemen, then you have Count 4, which charges the same day, once again is the gun charge, the § 924(c) count. Use of a firearm in connection with a crime of violence. That's the guns used to rob the Corner Cupboard in Bennettsville on the 21st of March last year." *Id.* at 18:3–19:19.

Counts 5 and 6: Count 5, Ladies and Gentlemen, the same day, occurred about 30 minutes later, an armed robbery of the Cash and Carry in Clio, South Carolina . . . . Count 6 charges once again a § 924(c) in connection with the armed robbery of the Cash and Carry. *Id.* at 19:14–20:8.

Count 7 and 8: Count 7, at the same time you'll hear from a young lady who was pulled up to the gas station at the Cash and Carry on the same date, when they robbed the Cash and Carry in Bennettsville. This young girl pulled up to get some gas and they jacked her car. Count 7, once again charges a carjacking . . . . Now, then Count 8 charges a §

> 924(c) in connection with the carjacking of this young lady at the same time the Cash and Carry robbery was going on. *Id.* at 20:10–23.

The Court has carefully reviewed the trial transcripts in detail and finds that the facts supporting Brown's conviction on each of these counts were established by the evidence presented. *See id.*; ECF No. 205. Finally, the Court carefully reviewed the Indictment in its charge and instructions to the jury. ECF No. 205 at 185:7–215:7 (walking through each count of the Indictment); ECF No. 175. This review made clear that each § 924(c) count stemmed from the previously charged predicate count in the Indictment. ECF No. 205 at 210:15–20 ("You must weigh all the evidence and determine whether the Defendant knowingly used, carried or possessed the firearm, and second, whether the use or carrying of the firearm was during and in relation to or the firearm was possessed in furtherance of *the* crime of violence in question.") (emphasis added). Accordingly, based on the record before it, the Court concludes that Brown's § 924(c) convictions on Counts 2, 4, 6, and 8 are not "speculative" simply because a general verdict form was used. He is therefore not entitled to relief on this argument, and the Government is entitled to summary judgment.

In summary, the Court has carefully considered Brown's challenges to his § 924(c) convictions and concludes that he has not asserted a persuasive basis for habeas relief on this claim. His § 924(c) conviction on Count 11 remains valid under *Crawley* because it is clearly supported by one valid predicate offense (carjacking). Similarly, in analyzing Brown's remaining § 924(c) convictions, the Court concludes that they are not "speculative" and that habeas relief is not warranted.

## II.  BROWN'S OTHER ARGUMENTS DO NOT ESTABLISH A BASIS FOR HABEAS RELIEF

Brown's § 2255 petition raises five additional arguments that do not fall squarely within the scope of the Fourth Circuit's order granting him permission to file a third § 2255 petition. The Court will address those arguments here.

### A.  The Parties' Arguments

Brown's five additional arguments are: (1) that Hobbs Act robbery is not a valid § 924(c) predicate crime of violence, (2) that he was sentenced in violation of the Supreme Court's decision in *Alleyne v. United States*, (3) that his § 924 convictions in connection with his kidnapping and carjacking convictions are invalid because the jury could have concluded that the elements for these counts were only established through his aiding and abetting of his codefendants, (4) that his sentence was the result of the "impermissible stacking" of multiple § 924(c) sentences, and (5) that his conviction on Count 12 for being a felon in possession is no longer valid in light of the Supreme Court's decision in *Rehaif v. United States*. *Id.* at 1–8.

In response, the Government asserts that these claims are procedurally barred because "[t]hey either exceed the scope of the Fourth Circuit's limited grant of permission to file a successive § 2255 motion, are time-barred, or are procedurally defaulted." ECF No. 589 at 9. Even so, the Government asserts that, were the Court to consider Brown's additional arguments, they fail on the merits. *Id.*

### B. The Court's Analysis

The Court has carefully reviewed Brown's five additional arguments. In doing so, and for the reasons that follow, the Court concludes that he is not entitled to relief on these arguments.

#### i.    *Hobbs Act Robbery is a predicate crime of violence.*

Brown's first additional argument asserts that his Hobbs Act robbery convictions on Counts 3 and 5 can no longer serve as predicate crimes of violence in support of his § 924(c) convictions on Counts 4 and 6. ECF No. 588 at 3. Brown previously raised this argument in his second § 2255. ECF No. 357. In its order denying that motion, the Court explained that, while the Fourth Circuit had not yet addressed that argument, "[e]very circuit court that has addressed the issue has concluded that substantive Hobbs Act robbery is a valid § 924(c) predicate, and "[t]here no basis to conclude that the Fourth Circuit would rule contrary to its sister circuits." ECF No. 403 at 2. That conclusion remains unchanged and is conclusive now that the Fourth Circuit has explicitly joined its sister circuits and ruled that a § 924(c) conviction based on Hobbs Act robbery qualifies as a crime of violence. *See United States v. Mathis*, 932 F.3d 242 (4th Cir. 2019). Hence, Brown is therefore not entitled to habeas relief on this argument, and the Court grants the Government's motion for summary judgment with respect to this claim.

#### ii.    *Brown was not sentenced in violation of Alleyne v. United States.*

Brown's second additional argument asserts that he was sentenced in violation of the Supreme Court's decision in *Alleyne v. United States*, 570 U.S. 99

(2013). In *Alleyne*, the Court held that any fact that increases a count's mandatory minimum sentence is not a sentencing factor but rather an element of the charged crime and must be submitted to the jury. *Id.* at 103. Here, Brown argues that, when he was sentenced in 2006, the Court violated the Supreme Court's 2013 decision in *Alleyne* by sentencing Brown's to an increased mandatory minimum of ten years on his first § 924(c) (Count 2) for discharging a firearm without first submitting the question of whether he actually discharged the firearm to the jury. ECF No. 588 at 4. In reviewing this argument, the Court concludes that it does not provide a basis for relief here because the Fourth Circuit has held that the rule announced in *Alleyne* is not retroactively applicable on collateral review since it is a procedural rule, not a substantive rule. *See Jones v. Zych*, No. 15-7399, 2020 WL 2119889 at *8 (4th Cir. Apr. 23, 2020) ("[W]e join our fellow circuits in holding that *Alleyne* . . . does not announce a watershed rule of criminal procedure, and thus does not apply retroactively to cases on collateral review"). *Alleyne* is therefore not a cognizable ground for relief here. Accordingly, the Court grants the Government's motion for summary judgment with respect to this claim.

   iii.   *Neither the aiding and abetting jury charge nor the Supreme Court's decision in Rosemond provide a basis for relief.*

Brown's third additional argument is twofold. First, he asserts that his carjacking convictions on Counts 1, 7, & 9 and kidnapping conviction on Count 10 cannot serve as valid § 924(c) predicates since he was also charged with aiding and abetting in each of these counts. ECF No. 588 at 5. Thus, Brown posits, "in relation

to the carjacking counts, as well as the kidnapping count, the jury may have found that [Brown] aided and abetted as a basis for the conviction." *Id.* Based on this theory, he suggests "the 18 U.S.C. § 924(c)(3)(A) convictions could have been based upon aiding and abetting which is categorically not a crime of violence as aiding and abetting can be done without meeting the force clause elements." *Id.* at 4.

Second, Brown asserts that his convictions on Counts 1, 7, 9, and 10 were in violation of the Supreme Court's 2014 decision in *Rosemond v. United States*, which held that an accomplice could be convicted of a § 924(c) offense based on aiding and abetting a valid predicate offense if he "knows beforehand of a confederate's design to carry a gun." *Rosemond v. United States*, 572 U.S. 65, 78 (2014). Brown argues that the rule articulated in *Rosemond* was violated at his 2006 trial because the jury was not instructed that he knew in advance that his co-defendants would carry a gun. *Id.*

In reviewing this collective argument, the Court finds that the first prong of Brown's argument is resolved adversely to him by the Fourth Circuit's decision in *United States v. Draven*, 77 F.4th 307 (2023). There, the Fourth Circuit held that "aiding and abetting a crime of violence also qualifies as a crime of violence" because "the 'law generally treats aiders and abettors the same as principals [.]'" *Id.* at 317 (quoting *Ali*, 991 F.3d at 574); *see also Ali*, 991 F.3d at 574 ("aiding and abetting a crime of violence is also categorically a crime of violence"). As noted in *Draven*, carjacking is a crime of violence under *Evans*. *Id.* "That [Brown] was convicted in tandem with [an] aiding and abetting charge does not alter [the

Court's] analysis because, under *Ali*, aiders and abettors are treated as principals." *Id.* Accordingly, because carjacking is clearly a crime of violence, "so too is aiding and abetting carjacking [.]" *Id.* Hence, there is no basis for Brown to challenge his § 924(c) convictions based the suggestion that the jury only convicted him on the aiding and abetting charge. Moreover, the Court need not address Brown's aiding and abetting arguments related to his conviction on Count 10 for kidnapping because, as explained above, the § 924(c) charged in conjunction with that offense also rests on the valid predicate offense of carjacking.

The Court is similarly unpersuaded by Brown's *Rosemond* argument. That case was decided eight years after Brown was sentenced, and this Court has determined that *Rosemond* does not apply retroactively to cases on collateral review. *See generally United States v. Robinson*, No. CR 6:03-616-HMH, 2014 WL 12634793, at *2 (D.S.C. Dec. 1, 2014) ("*Rosemond* is not retroactive to cases on collateral review."). Moreover, while the Fourth Circuit has not directly analyzed whether *Rosemond* applies retroactively, it has affirmed decisions of this Court and others holding that *Rosemond* does not apply retroactively to cases on collateral review. *See United States v. Davis*, No. CR 0:04-898-JFA, 2015 WL 13721525, at *4 (D.S.C. Feb. 9, 2015), *aff'd*, No. 15-6326, 608 F. App'x 164 (4th Cir. July 1, 2015); *Cooper v. Brien*, No. 5:14CV112, 2015 WL 6085717, at *4 (N.D.W. Va. Oct. 16, 2015), *aff'd sub nom. Cooper v. O'Brien*, 639 F. App'x 196 (4th Cir. 2016); *Bey v. Hollenback*, No. 5:14-HC-2016-FL, 2015 WL 859575, at *1 (E.D.N.C. Feb. 27, 2015), *aff'd sub nom. Bey v. Hollenbeck*, 616 F. App'x 125 (4th Cir. 2015). *Rosemond* is

therefore not a basis for relief here, and the Government is entitled to judgment as a matter of law.

Alternatively, even if the Court found that *Rosemond* applies retroactively, it would still not provide Brown with a basis for relief because his claim would be untimely. Assuming *Rosemond* applies retroactively as a right recognized by the Supreme Court, then a habeas petitioner seeking relief under the rule articulated in that case must comply with § 2255(f)'s one year statute of limitations. 28 U.S.C. § 2255(f). The limitations period would be triggered by "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." § 2255(f)(3). *Rosemond* was decided on March 5, 2014, and Brown filed his petition on July 28, 2022. His *Rosemond* claim is therefore untimely under § 2255(f)(3). Furthermore, Brown has not asserted a basis for the equitable tolling of § 2255(f)'s strict one year statute of limitations. *See Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000) ("any invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes . . . . [A]ny resort to equity must be reserved for those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result."). Accordingly, even if *Rosemond* applied retroactively, the Government would still be entitled to summary judgment because Brown's claim is untimely.

Further, in connection with *Rosemond*, a review of the facts outlined earlier leads to the clear conclusion that Brown used firearms in committing the offenses of conviction and knew "beforehand of [his] confederate's design to carry a gun." In reviewing all of the offenses charged in the Indictment, the Court notes that each involved the use of firearms by Brown and the confederates with whom he committed the violent offenses outlined. No evidence supports a conclusion that Brown acted without prior knowledge that he or his confederates would possess firearms while committing the many violent offenses in this case.

      iv.    <u>The First Step Act's modifications to § 924(c)'s "stacking" regime are not a basis for relief.</u>

Brown's fourth additional argument asserts that he is entitled to habeas relief because his sentence is the result of "stacked" § 924(c) sentences. ECF No. 588 at 7. In support of this claim, Brown points to the First Step Act of 2018's modification of § 924(c)'s sentencing regime regarding the "stacking" of multiple § 924(c) sentences. *Id.* In reviewing this argument, the Court concludes that Brown has not asserted a cognizable basis for relief under § 2255.

By way of background: when Brown was sentenced in 2006, federal prosecutors could "stack" multiple violations of § 924(c) for sentencing because a first and "second or subsequent" offense could be charged at the same time. Thus, a defendant, like Brown, who was charged with five violations of 924(c), could face the statutory mandatory minimum sentence as to the first count (5, 7, or 10 years depending on the way the firearm was used) and a 300-month consecutive

mandatory minimum sentence on *each* of the four others § 924(c) counts. Thus, a defendant, like Brown, with four "stacked" § 924(c) counts would face a total mandatory minimum sentence of 1,200 months or 100 years. In the First Step Act of 2018, Congress modified § 924(c) such that the 25-year mandatory minimum penalty now applies to "a second or subsequent" § 924(c) conviction only if the prior § 924(c) conviction already "has become final." Pub. L. No. 115-391, § 403(a), 132 Stat. 5194, 5222. That is, the defendant was convicted of the offense in a separate proceeding.

Brown asserts that, considering the First Step Act's modifications to the "stacking" of § 924(c) sentences, he is entitled to habeas relief because his sentence is partially the result of the "stacking" of § 924(c) sentences. However, it is clear the First Step Act's changes to § 924(c)'s sentencing regime do not provide relief as they do not retroactively apply to Brown's case. Under the plain language of the Act, the changes to the "stacking" of multiple § 924(c)s do not apply to cases—like Brown's— where a sentence has already been imposed:

> (b) APPLICABILITY TO PENDING CASES.—This section, and the amendments made by this section, shall apply to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment.

*Id.*; *see also United States v. McCoy*, 981 F.3d 271, 275 (4th Cir. 2020) ("that change does not apply retroactively to sentences—like the defendants'–imposed before December 21, 2018, when the First Step Act became law.");[3] *Brown v. Antonelli*, No.

---

[3] The Fourth Circuit has ruled that the First Step Act's modifications to § 924(c) stacking regime can be considered in other contexts. *See generally United States v. Brown*, ____F.4th____, 2023 WL

CV 8:19-1344-HMH-JDA, 2019 WL 2358977, at *2 (D.S.C. June 4, 2019), *aff'd*, 789 F. App'x 976 (4th Cir. 2020) ("[Defendant] was sentenced in 2007, prior to the enactment of the First Step Act. Accordingly, based on the plain language of the First Step Act, § 403 does not retroactively affect [Defendant]'s sentence, and his objection is without merit."). Thus, the First Step Act is not a basis for habeas relief in this action, and the Court grants the Government's motion for summary judgment with respect to this claim.

v.     <u>The Supreme Court's decision in Rehaif does not provide a basis for relief.</u>

Brown's final additional argument challenges his conviction on Count 12 for being a felon in possession of a firearm. ECF No. 588 at 7. Specifically, Brown asserts he is entitled to relief because the Court did not instruct the jury at his 2006 trial in accordance with the Supreme Court's 2019 decision in *Rehaif v. United States*. *Id.* In that decision, the Supreme Court held that, to be convicted of being a felon in possession of a firearm in violation of § 922(g), the defendant must know both that he possessed a firearm and that he was prohibited from possessing a firearm at the time of its possession. *Rehaif v. United States*, 139 S. Ct. 2191, 2196 (2019). Thus, Brown speculates that, because "[t]he jury was not instructed in this case that they had to determine that [Brown] knew that he had the legal status of a convicted felon," it "could have convicted [Brown] without having made the finding which is now required by *Rehaif v. United States*, that finding being that he knew

---

5257673 at *7 (4th Cir. Aug. 16, 2023) (evaluating a defendant's "stacked" sentence in reviewing the denial of his motion for compassionate release). However, a petition for habeas corpus pursuant to § 2255 is not one of these contexts.

he was a convicted felon." ECF No. 588 at 7. In response, the Government asserts that Brown's *Rehaif* argument is outside of § 2255(f)(3)'s one year statute of limitations by one day. ECF No. 598 at 19.

In addressing Brown's *Rehaif* argument, the Court first notes that *Rehaif* is not the only governing case on this issue. Rather, the Supreme Court's 2020 decision in *United States v. Greer* controls this Court's analysis of Brown's felon in possession conviction. In reviewing this decision, the Court concludes that Brown is not entitled to relief. However, before discussing its reasoning, the Court will first provide some necessary background regarding the interrelationship between § 922(g), *Rehaif*, and *Greer*.

Section 922(g) prohibits felons from possessing firearms and works in conjunction with § 924. In relevant part, § 924(a)(8) provides: "Whoever knowingly violates subsection [] (g) of section 922 shall be fined as provided in this title, imprisoned not more than 15 years, or both." 18 U.S.C. § 924(a)(8). Always beginning with the word "who," subsection (g) of § 922, in turn, has nine subsections listing nine statuses making it "unlawful" for a person "to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." Id. § 922(g). Among the nine statuses listed in § 922(g) are "any person": (1) "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year." *id.* § 922(g)(1). As noted, in *Rehaif*, the Supreme Court held that the word "knowingly" as

used in § 924 applies to both a defendant's conduct and status. 139 S. Ct. at 2200. As distilled by the Court, *Rehaif* held that "in a prosecution under 18 U.S.C. § 922(g) and § 924(a)(2), the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." *Id.*

After *Rehaif*, the Fourth Circuit decided *United States v. Gary*, 954 F.3d 194, 199 (4th Cir. 2020), *rev'd sub nom Greer v. United States*, 141 S. Ct. 2090 (2021). There, the Fourth Circuit found that the failure to inform the defendant, Gary, of the knowledge element was plain error. *Id.* at 202. The Fourth Circuit also held that these "*Rehaif* errors" are structural and require *vacatur per se. Id.* The Supreme Court then consolidated review of *Gary* and several other cases in *Greer*. In doing so, the Court held that a district court's failure to address a defendant's knowledge of his status as a felon was not a structural error requiring automatic reversal and, instead, was subject to plain error review where the knowledge issue was not preserved for appeal. *Greer*, 141 S. Ct. at 2096. The *Greer* court ruled that to satisfy plain error review, a defendant carries the burden of establishing a reasonable probability that a different outcome would have occurred had the defendant been aware of the knowledge element. *Id.* In the setting of a "felon-in-possession case where the defendant was in fact a felon when he possessed firearms," the Supreme Court noted that "the defendant faces an uphill climb in trying to satisfy the substantial-rights prong of the plain-error test based on an argument that he did not know he was a felon. The reason is simple: If a person is a felon, he ordinarily

knows he is a felon." *Id.* at 2097 (citing *Gary*, 963 F.3d at 423 (Wilkinson, J., concurring in denial of reh'g en banc) ("Felony status is simply not the kind of thing that one forgets.")).

In essence, the Supreme Court held in *Greer* that, "[i]n short, if a defendant was in fact a felon, it will be difficult for him to carry the burden on plain-error review of showing a 'reasonable probability' that, but for the *Rehaif* error, the outcome of the district court proceedings would have been different." *Id.* The Court noted that this was especially true in situations where a defendant pled guilty because "[a] defendant considering whether to plead guilty would recognize as much and would likely factor that reality into the decision to plead guilty." *Id.*

Here, the Court finds that, based on its careful review of the record, Brown cannot credibly argue that at the time he possessed the firearm at the heart of his felon in possession conviction, he was unaware he had been convicted of a crime punishable by imprisonment for a term exceeding one year. *See generally Greer*, 141 S. Ct. at 2095 ("as many courts have recognized and as common sense suggests, individuals who are convicted felons ordinarily know they are convicted felons."). As noted in his PSR, in 2002 Brown was arrested and convicted of possession of a weapon of mass destruction in Robeson County, North Carolina. PSR ¶ 60. Specifically, he was convicted of being in possession of a weapon of mass death and destruction. *Id.* The weapon of mass destruction was a sawed-off 20-gauge shotgun. *Id.* For this conviction, Brown served 960 days imprisonment. *Id.* Given Brown's service of this significant sentence, the Court concludes that, had it been a required

Page 33 of 35

element of proof at trial, the Government could have readily proven the knowledge-of-status element. *See United States v. Norman*, No. CR 7:17-527-HMH, 2020 WL 4043648, at *8 (D.S.C. July 17, 2020) ("The Government could have easily proven that Norman knew he was a felon at the time he possessed a firearm, as there is overwhelming evidence to establish this element."). Accordingly, based on the Court's review of both *Greer* and the record in this case, it concludes that Brown cannot carry his burden of showing a "reasonable probability" that, but for any alleged *Rehaif* error, the outcome of the his proceedings would have been different. He is therefore not entitled to habeas relief based on this argument, and the Court grants the Government's motion for summary judgment with respect to this claim.

In summary, the Court concludes that Brown's five additional arguments outside of the scope of the Fourth Circuit's order granting him permission to file a third § 2255 do not establish a basis for relief in this habeas action. Hence, the Government is entitled to summary judgment on each of these claims.

## <u>EVIDENTIARY HEARING</u>

Section 2255 provides that:

> Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall...grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.

28 U.S.C. § 2255; *see also United States v. O'Quinn*, 166 F. App'x. 697, 698 (4th Cir. 2006) ("Unless it is clear from the record, as expanded, that the prisoner is not entitled to relief, § 2255 makes an evidentiary hearing mandatory."). As described

above, the Court finds the current record is clearly sufficient to dispose of all of Cooper's claims. The record "conclusively show[s] that [Brown] is entitled to no relief." Therefore, an evidentiary hearing is unnecessary.

## CERTIFICATE OF APPEALABILITY

The Court has reviewed this petition in accordance with Rule 11 of the Rules Governing Section 2255 Proceedings. For the Court to issue a certificate of appealability, Rule 11 requires that Brown satisfy the requirements of 28 U.S.C. § 2253(c)(2), which in turn requires that he "has made a substantial showing of the denial of a constitutional right." The Court concludes that he has not made such a showing, and it is therefore not appropriate to issue a certificate of appealability as to the issues raised in this petition. Brown is advised that he may seek a certificate from the Fourth Circuit under Rule 22 of the Federal Rules of Appellate Procedure.

## CONCLUSION

For the reasons stated, Brown's petition for relief pursuant to § 2255, ECF. ECF Nos. 546 & 588 is denied. The Court grants the Government's motion for summary judgment, ECF No. 598.Further, the Court also denies a certificate of appealability because Brown has failed to make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This action is therefore dismissed.

**IT IS SO ORDERED**.

s/ Terry L. Wooten
Terry L. Wooten
Senior United States District Judge

January 8, 2024
Columbia, South Carolina